# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2021 CA 1516

## IN THE MATTER OF THE INTERDICTION OF
## GARRETT J. CLAYBOURN

Judgment Rendered: JUL 2 0 2022

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. P-109173

The Honorable William A. Morvant, Judge Presiding

* * * * *

| | |
|---|---|
| Gus A. Fritchie, III<br>New Orleans, Louisiana<br>and<br>Hillary A. Brouillette<br>Baton Rouge, Louisiana | Attorneys for Appellant,<br>Maria A. Finley |
| Phillip A. Wittmann<br>Matthew S. Almon<br>Baton Rouge, Louisiana | Attorneys for Appellee,<br>Francis Elizabeth Claybourn |

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

**WOLFE, J.**

Attorney Maria A. Finley appeals the trial court's judgment that imposed sanctions against her pursuant to La. Code Civ. P. art. 863 for attempting to enroll as counsel of record for the interdict in this proceeding. We affirm.

## FACTS

On February 22, 2021, Francis Elizabeth Claybourn instituted this proceeding for the temporary interdiction of her husband, eighty-four-year-old Garrett J. Claybourn, alleging that he suffered from worsening dementia and other medical conditions that rendered him unable to care for himself, his affairs, or his property. In her supporting affidavit, Mrs. Claybourn attested she learned that Mr. Claybourn transferred nearly $1 million in community funds to newly opened accounts, at least one of which was opened under the names of Mr. Claybourn and Ms. Finley as power of attorney. Mrs. Claybourn denied knowing Ms. Finley but opined that Ms. Finley was an attorney introduced to Mr. Claybourn by his caregiver and Ms. Finley's former client, Melba Braud, who then encouraged Mr. Claybourn to hire Ms. Finley as his power of attorney, assisted him in transferring the community funds to the new accounts, and gave Ms. Finley unfettered access to them. Financial records attached to Mrs. Claybourn's supporting affidavit showed that $15,000.00 in checks had been issued from the account opened in Mr. Claybourn's and Ms. Finley's names. The petition for temporary interdiction was additionally supported by the affidavit of Dr. Philip Louis Cenac, Jr., a psychiatrist who examined Mr. Claybourn on February 19, 2021, and concluded that Mr. Claybourn was unable to care for his health or property due to infirmity.

The trial court signed an order of temporary interdiction the same day the petition was filed (February 22, 2021), appointed Mrs. Claybourn temporary curator, and appointed attorney Kim Brooks to represent Mr. Claybourn. A preliminary hearing for the interdiction was set for March 8, 2021.

2

On February 23, 2021, the day after the order of temporary interdiction was signed, Ms. Finley filed a motion on Mr. Claybourn's behalf, claiming to be his attorney and seeking both a temporary restraining order against the appointment of Mrs. Claybourn as curator and the dismissal of the interdiction proceeding based on fraud and ill practices. The motion set forth that Mr. Claybourn hired Ms. Finley as his attorney "to assist him in handling his business matters" and appointed Ms. Finley as his power of attorney, then had her assist in transferring funds to an account that his wife could not access. The motion further stated that when Mrs. Claybourn learned of this on February 17, 2021, she "flew into a rage." Ms. Finley directed the court's attention to an attached temporary restraining order against Mrs. Claybourn that was granted on February 22, 2021, by another division of the trial court pursuant to a petition for protection from abuse that Ms. Finley assisted Mr. Claybourn in filing. The trial court signed the order filed with Ms. Finley's motion that ordered Mrs. Claybourn to show cause why the interdiction proceeding should not be dismissed but struck through the language granting the requested temporary restraining order.

On February 25, 2021, Mr. Claybourn's court-appointed attorney, Ms. Brooks, filed an *ex parte* motion to nullify all powers of attorney executed by Mr. Claybourn prior to the order of temporary interdiction or to freeze the account opened in Mr. Claybourn's and Ms. Finley's names. The motion set forth that Ms. Brooks' preliminary investigation of Mr. Claybourn's finances confirmed that Ms. Finley held a power of attorney and was named on one of his bank accounts from which funds were being expended. Thus, the requested relief was sought to preserve the interdict's property pending a full hearing on the interdiction. The trial court granted the motion the same date it was filed and ordered both the removal of Ms. Finley's name from the account and the termination of the power of attorney issued to Ms. Finley pending further orders.

3

The next day, Ms. Finley filed an *ex parte* motion to discharge Mr. Claybourn's court-appointed attorney pursuant to La. Code Civ. P. art. 4549(C), which requires the discharge of the court-appointed attorney if the defendant retains his own attorney or knowingly and intelligently waives the assistance of an attorney. Ms. Finley claimed to be Mr. Claybourn's personal attorney and his attorney for this matter, as well as Mr. Claybourn's power of attorney, and disputed the petition's claim that Mr. Claybourn was suffering from dementia. Addressing the petition's allegations, Ms. Finley suggested that it was routine practice for a power of attorney's name to be listed on a bank account. However, she denied making any financial transactions on the account, stating Mr. Claybourn himself withdrew $15,000.00 from the account because he liked to have cash on hand. Ms. Finley stated she understood that her power of attorney had been revoked by the trial court's *ex parte* order; however, she claimed that Mr. Claybourn still requested that she represent him as his personal attorney in all matters. Thus, the motion stated that Mr. Claybourn moved for an order immediately discharging Ms. Brooks as his attorney. The trial court set the matter for contradictory hearing.

On March 2, 2021, attorney John S. McLindon filed a motion and order to substitute counsel of record, claiming that the court should discharge Ms. Brooks as Mr. Claybourn had retained Mr. McLindon to represent him. According to the record, Mr. McLindon had been approached by Ms. Finley to assist her in this case. On the same day, Ms. Brooks filed a motion seeking an emergency hearing to determine whether Mr. Claybourn had the ability to hire his own counsel. Ms. Brooks' motion stated she observed Mr. Claybourn to be extremely paranoid and easily influenced, which was also observed by the psychiatrist who examined Mr. Claybourn. The motion stated that Ms. Brooks believed Ms. Finley was influencing and guiding Mr. Claybourn's decision to hire another attorney, having advised Mr. Claybourn to hire Mr. McLindon. Mr. McLindon filed a memorandum in opposition

4

to Ms. Brooks' motion, stating that he met with Mr. Claybourn on March 1, 2021, after which he was retained as counsel by Mr. Claybourn. Mr. McLindon opposed the suggestion that as a temporary interdict Mr. Claybourn had no right to retain his own counsel. Both motions were set for contradictory hearings on the same date.

Ms. Finley then filed a supplemental and amending motion for discharge of the court-appointed attorney. In the motion, Ms. Finley re-stated her position that she was retained as counsel by Mr. Claybourn. She described a February 24, 2021 dispute with Ms. Brooks at a hospital over Mr. Claybourn that resulted in Ms. Brooks telephoning the trial judge, who ordered Ms. Finley to release Mr. Claybourn to Ms. Brooks under threat of contempt. Ms. Finley related other out-of-court facts and argued that Ms. Brooks was derelict in her duties as court-appointed attorney for Mr. Claybourn.

On March 5, 2021, the trial court held a hearing on the motions relative to Mr. Claybourn's legal representation in this interdiction proceeding. Ms. Finley, Mr. McLindon, Ms. Brooks, as well as Mrs. Claybourn and her counsel were present. Mr. Claybourn was not present as it was reported to the court that he was hospitalized and on life support. The trial court first addressed Ms. Finley's motions, stating the motions were dismissed and denied because Ms. Finley failed to follow proper procedure and file a motion to enroll as counsel of record in this matter. The trial court then took up Mr. McLindon's motion to substitute counsel and the motion to determine whether Mr. Claybourn had the requisite capacity to hire counsel. The trial court clarified that at the end of the hearing it would make a ruling, and everyone would know definitively which lawyer would be representing Mr. Claybourn.

The entire suit record, which included a medical report by Dr. Cenac, was introduced into evidence. The trial court stated it was particularly concerned with Dr. Cenac's finding that Mr. Claybourn was easily influenced and demonstrated deficient memory, resulting in the last person speaking with him having the greatest

5

influence. Based on the evidence presented, the trial court was unconvinced that the decision to hire Mr. McLindon was Mr. Claybourn's and not Ms. Finley's. Thus, the trial court denied Mr. McLindon's motion to enroll, noting the ruling was not a reflection on Mr. McLindon's legal ability.

In response to Mr. McLindon's question about how to handle any further requests by Mr. Claybourn to represent him, the trial court stated:

> I'll tell you what you do. You don't do anything because I've ruled right now that [Mr. Claybourn is] under an order of temporary interdiction. I've read Dr. Cenac's report, and I don't think [Mr. Claybourn] has the requisite mental intent to knowingly, intelligently waive [Ms.] Brooks' representation and hire yours. And that's why I told y'all, once y'all finish arguing, I'm going to make my position very clear. I mean, I don't know how much clearer I can say that I'm not letting you enroll and I'm not discharging [Ms.] Brooks. She will proceed as counsel of record for Mr. Claybourn through the interdiction proceeding unless a higher court tells me something to the contrary.

At the conclusion of the hearing, Ms. Finley asked the trial court to include its denial of her motions in its written judgment. The trial court refused, stating:

> You're not counsel of record. ... You don't represent a party. [Ms.] Brooks was the attorney of record for Mr. Claybourn, court-appointed attorney for Mr. Claybourn. You simply started filing pleadings without ever filing a motion to enroll, and I am not going to recognize that. Until you follow the Code of Procedure, you can't simply jump in and start filing pleadings. Mr. McLindon is the only who did it correctly. He filed the appropriate motion to enroll to seek court approval to enroll as counsel for the interdict and remove [Ms.] Brooks. So, no, the order is not going to recognize things that were filed without compliance to the Code of Civil Procedure. All right. This matter is now concluded.

Four days later, Ms. Finley filed an *ex parte* motion to enroll as counsel of record and for discharge of the court-appointed attorney pursuant to La. Code Civ. P. art. 4549(C). In the motion, Ms. Finley claimed to have been hired by Mr. Claybourn on the afternoon of February 22, 2021, although her representation of him had been discussed previously when they learned an interdiction proceeding would likely be filed. The order attached to Ms. Finley's motion was stamped "DENIED," with the following notation:

6

This motion is denied for several reasons. First and foremost, it is an improper ex parte motion under [U]niform [R]ule 9.8(d) and C.C.P. article 963. Additionally, it is denied for the detailed reasons stated on the record on 3/5/21 in connection with the denial of [Mr.] McLindon's similar motion to enroll and discharge Kim Brooks as the court appointed attorney for [Mr.] Claybourn[.] Moreover, the court is of the opinion, considering the previous motions filed in this matter and the rulings made by the court, that the present motion is filed in violation [of] C.C.P. art. 863(B) and therefore sets the matter for a hearing to determine [if] sanctions should not be imposed.

The trial court then issued an order setting a hearing for sanctions, which stated that it was issued on the court's own motion "in light of previous rulings in [this] matter and considering all filings by [Ms.] Finley related to this proceeding."

On March 9, 2021, the same date that Ms. Finley filed her *ex parte* motion to enroll, Mr. Claybourn died. His succession was opened in a separate proceeding. Mrs. Claybourn filed a motion to consolidate the two proceedings, contending that they share common issues of fact and law relating to Mr. Claybourn's capacity to execute a will days before this interdiction proceeding was filed, which Ms. Finley notarized, and undue influence by Ms. Finley and Ms. Braud. Both Ms. Finley and Ms. Braud, who was a particular legatee under the will notarized by Ms. Finley, opposed the motion. The motion was denied since Mr. Claybourn's death terminated the interdiction proceeding, leaving only the issue of sanctions against Ms. Finley remaining outstanding in this suit.

Ms. Finley filed a motion to recuse the trial judge from presiding over the sanction proceeding against her, arguing the judge's statements and actions, including his institution of a sanctions proceeding, displayed bias against her. Another judge of the trial court held an evidentiary hearing, and based on the testimony and exhibits introduced, denied Ms. Finley's motion.

A hearing was then held for Ms. Finley to show cause why she should not be sanctioned for violating La. Code Civ. P. art. 863. Ms. Finley argued that the trial court stated at the March 5, 2021 hearing that her motions would not be recognized

7

because she had not filed a motion to enroll; therefore, it was not unreasonable for her to conclude that she needed to file a motion to enroll to have her filings recognized. Ms. Finley further argued that her situation was "significantly different" from that of Mr. McLindon, who was retained after entry of the order of temporary interdiction at a time that Mr. Claybourn was determined to lack capacity. In contrast, Ms. Finley argued that she was retained by Mr. Claybourn before this interdiction proceeding was filed, believing in good faith that she was retained to represent Mr. Claybourn in all matters.

Ms. Finley testified at the hearing and described the circumstances under which she was retained by Mr. Claybourn in January 2021. As evidence, she offered the contract for services that Mr. Claybourn signed on January 15, 2021, which stated that Ms. Finley was being retained for the purposes of a "Power of Attorney, Living Will, [and] Testamentary Will." Ms. Finley stated that when she learned a petition for interdiction would be filed, she asked Mr. Claybourn if he wanted her to represent him and Mr. Claybourn stated that he did. According to Ms. Finley, this occurred "a couple of days" before the order of temporary interdiction was signed. Ms. Finley stated that she and Mr. Claybourn were at the courthouse seeking the protective order against Ms. Claybourn on the day the petition for interdiction was filed and, upon learning of the filing, she confirmed that Mr. Claybourn wanted her to represent him in this proceeding. She testified that Mr. Claybourn had checks with him and wrote a check to her to pay for her representation. However, Ms. Finley acknowledged that there was no written contract for her representation of Mr. Claybourn in this matter, stating, "[t]hat was a contract that was verbal between Mr. Claybourn and I."

When asked specifically about filing the motion to enroll, Ms. Finley explained that after denying Mr. McLindon's motion to enroll the trial court "was very specific, whether I agree or not, he said for me to file a motion to enroll if I

8

wanted – I forget the wording, I think you said the wording. But it was very – I mean, he said it, you cannot do this unless you file a motion to enroll."

After hearing Ms. Finley's testimony and the arguments presented, the trial court stated that in twenty-five years it had yet to see someone who was as much of an obstructionist as Ms. Finley. The trial court noted that Ms. Finley had no written contract or evidence that she was retained to represent Mr. Claybourn in this proceeding other than her own claim. The trial court further observed that Ms. Finley was present during the hearing when it denied Mr. McLindon's motion to enroll upon finding Mr. Claybourn lacked capacity, then filed an almost verbatim motion to Mr. McLindon's. The trial court stated, "I think it's clearly a violation of [Article] 863(B)(1) because all it did was attempt to once again delay this matter, which Ms. Finley tried to do at multiple times. ... And there is actually no basis, in fact or in law, after my ruling specifically saying Mr. Claybourn lacked the requisite mental capacity to waive Ms. Brooks and hire his attorney." Finding Ms. Finley's filing to violate Article 863, the trial court imposed sanctions in the amount of $7,500.00. The trial court signed a judgment to that effect on October 8, 2021. Ms. Finley now suspensively appeals.

## DISCUSSION

At the time the sanctions were imposed and the judgment at issue was signed, Article 863 provided:[1]

> A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose physical address for service of process shall be stated. A party who is not represented by an attorney shall sign his pleading and state his physical address for service of process. If mail is not received at the physical address for service of process, a designated mailing address shall also be provided.
>
> B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an

---

[1] Article 863 was amended by La. Acts 2021, No. 68, §1, effective January 1, 2022, to add requirements for providing email addresses.

attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.

D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.

F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.

G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.

Article 863 imposes an affirmative duty on attorneys and litigants who sign pleadings to make an objectively reasonable inquiry into the facts and the law. In determining whether an attorney has breached that duty, the trial court is required to test the signer's conduct by inquiring what was reasonable to believe at the time the

10

pleading was signed and submitted. **Landry v. Landry**, 2021-0337 (La. App. 1st Cir. 10/8/21), 331 So.3d 351, 356, <u>writ denied</u>, 2022-00044 (La. 3/2/22), 333 So.3d 835. Sanctions under Article 863 are intended only for exceptional circumstances; therefore, when there is even the slightest justification for the assertion of a legal right, sanctions are not warranted. **Landry**, 331 So.3d at 356. The trial court's determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. **Droddy v. Porter**, 2019-0633 (La. App. 1st Cir. 12/27/19), 292 So.3d 925, 928.

The trial court found that Ms. Finley violated Article 863 when she filed her motion to enroll since it had just denied Mr. McLindon's motion to enroll upon finding that Mr. Claybourn lacked the capacity to hire his own attorney. Although Ms. Finley contends that her situation is different than Mr. McLindon's because she was retained prior to entry of the order of interdiction, she had no objective proof that she was hired to represent Mr. Claybourn for purposes other than drafting the power of attorney, living will, and testamentary will. Furthermore, Ms. Finley was present at the March 5, 2021 hearing when the trial court definitively stated that Ms. Brooks would remain counsel of record for Mr. Claybourn in this proceeding unless a reviewing court ruled otherwise. The trial court's ruling left no reasonable basis for Ms. Finley to believe she could be substituted as counsel of record. Consequently, we find no manifest error in the trial court's determination that Ms. Finley's filing violated Article 863.

Once the trial court finds a violation of Article 863 and imposes sanctions, the determination of the type and amount of the sanction is reviewed on appeal for abuse of discretion. **Landry**, 331 So.3d at 356. An award of reasonable attorney's fees is authorized; however, this does not necessarily equate to actual attorney's fees. The goal to be served by imposing sanctions is not wholesale fee shifting but correction of litigation abuse. **Landry**, 331 So.3d at 356.

11

After reviewing the record, we find no abuse of the trial court's discretion in finding that $7,500.00 was an appropriate sanction in the instant case. The trial court clearly set the amount to achieve the goal of correcting litigation abuse. Although we might have awarded a lesser amount, we cannot conclude the amount set by the trial court constituted an abuse of its discretion.

## CONCLUSION

The October 8, 2021 judgment of the trial court is affirmed. Costs of this appeal are assessed to Maria A. Finley.

**AFFIRMED.**